1 | RUTAN & TUCKER, LLP
Philip D. Kohn (State Bar No. 90158)
2 |   City Attorney, City of Laguna Beach
pkohn@rutan.com
3 | Douglas J. Dennington (State Bar No. 173447)
ddennington@rutan.com
4 | Ajit Singh Thind (State Bar No. 268018)
  Deputy City Attorney, City of Laguna Beach
5 |   athind@rutan.com
611 Anton Boulevard, Suite 1400
6 | Costa Mesa, California 92626-1931
Telephone:  714-641-5100
7 | Facsimile:   714-546-9035

8 | O'MELVENY & MYERS LLP
Michael G. Yoder (State Bar No. 83059)
9 |   myoder@omm.com
Christopher S. Whittaker (State Bar No. 274699)
10 |   cwhittaker@omm.com
610 Newport Center Drive, Suite 1700
11 | Newport Beach, California 92660-6429
Telephone:  949-823-6900
12 | Facsimile:   949-823-6994

13 | Attorneys for Defendants
CITY OF LAGUNA BEACH and
14 | LAGUNA BEACH POLICE DEPARTMENT

15 |

16 | UNITED STATES DISTRICT COURT

17 | CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

18 |

| | |
|---|---|
| KENNETH GLOVER, DAVID SESTINI, DOUGLAS FREDERES JR., JEFFREY AIKEN, KATRINA AUNE, JOHN MILLER, and LISA HOLBROOK, individually, and on behalf of all others similarly situated, | Case No. 8:15-CV-01332 AG (DFMx) |
| | Assigned for all purposes to: Honorable Andrew J. Guilford United States District Judge |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| CITY OF LAGUNA BEACH and LAGUNA BEACH POLICE DEPARTMENT, a California charter city, | Hearing: Date        January 25, 2016 Time:        10:00 a.m. Courtroom:  10D |
| Defendants. | |

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

**Page**

1.0   Introduction ...................................................................................... 1

   1.1   Plaintiffs' motion .................................................................. 1

   1.2   Preliminary statement ......................................................... 1

   1.3   Factual background .............................................................. 3

   1.4   General standards for preliminary injunction ....................... 5

2.0   Plaintiffs are unlikely to succeed on the merits of their claims ....................... 6

   2.1   Plaintiffs are unlikely to succeed on their Eighth Amendment claims because the state and local laws in question do not punish status ....................... 6

   2.2   Plaintiffs are unlikely to succeed on their ADA and Rehabilitation Act claims ........................................... 10

      2.2.1   The Court cannot conclude that Plaintiffs are likely disabled because they have submitted no competent evidence of their alleged disabilities ......................... 12

      2.2.2   Plaintiffs are not denied—but in fact have affirmatively received—the benefit of the ASL provided by the City .................................................. 12

      2.2.3   To the extent that any of Plaintiffs do not receive the benefit of the ASL, that is by reason of their own choices and actions, not their alleged disabilities .................... 13

      2.2.4   Plaintiffs have not identified an available reasonable accommodation because the relief that they request would fundamentally alter the nature of the service provided by the City .................................................. 15

3.0   Plaintiffs fail to show they are likely to suffer irreparable harm .................. 18

4.0   Plaintiffs fail to show a preliminary injunction is in the public interest and that the equities tip in their favor ................................. 20

5.0   The proposed order is uncertain and incapable of enforcement ................... 22

6.0   Conclusion ...................................................................................... 25

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-i-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. Choate,*
    469 U.S. 287 (1985) ............................................................ 17

*Amoco Prod. Co. v. Vill. of Gambell,*
    480 U.S. 531 (1987) ............................................................ 20

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013) ................................................... 5

*Burton v. City of Belle Glade,*
    178 F.3d 1175 (11th Cir.1999) ................................................ 24

*Caribbean Marine Servs. Co. v. Baldrige,*
    844 F.2d 668 (9th Cir. 1988) ................................................. 18

*City of New York v. Mickalis Pawn Shop, LLC,*
    645 F.3d 114 (2d Cir. 2011) .................................................. 24

*Cmtys. Actively Living Indep. & Free v. City of Los Angeles,*
    No. 09-0287, 2011 U.S. Dist. LEXIS 118364 (C.D. Cal. Feb. 10,
    2011) .......................................................................... 11

*Columbia Pictures Indus. v. Gary Fung,*
    710 F.3d 1020 (9th Cir. 2013) ................................................ 23

*Del Webb Cmtys., Inc. v. Partington,*
    652 F.3d 1145 (9th Cir. 2011) ................................................ 23

*DISH Network Corp. v. F.C.C.,*
    653 F.3d 771 (9th Cir. 2011) .................................................. 5

*Federal Election Com. v. Furgatch,*
    869 F.2d 1256 (9th Cir. 1989) ................................................ 24

*Fortyune v. Am. Multi-Cinema, Inc.,*
    364 F.3d 1075 (9th Cir. 2004) ................................................ 22

*Hedberg v. Indiana Bell Tel. Co.,*
    47 F.3d 928 (7th Cir. 1995) .................................................. 23

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-ii-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

|  | Page(s) |
|---|---|

**FEDERAL CASES (CONT.)**

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ................................................................. 6

*Ingraham v. Wright*,
  430 U.S. 651 (1977) ................................................................................. 7

*Jones v. City of Los Angeles*,
  444 F.3d 1118 (9th Cir. 2006), *vacated* by 505 F.3d. 1006 (9th Cir.
  2007) ......................................................................................................... 9

*Joyce v. City & County of San Francisco*,
  846 F.Supp. 843 (N.D. Cal. 1994) .......................................................... 7

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v.
  Connaughton*,
  752 F.3d 755 (9th Cir. 2014) ................................................................. 20

*Lehr v. City of Sacramento*,
  624 F.Supp.2d 1218 (E.D. Cal. 2009) ........................................... 7, 9, 10

*Lovell v. Chandler*,
  303 F.3d 1039 (9th Cir. 2002) ............................................................... 11

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) ............................................................... 11

*MGM Studios, Inc. v. Grokster, Ltd.*,
  518 F.Supp.2d 1197 (C.D. Cal. 2007) .............................................. 24, 25

*Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*,
  966 F.2d 1292 (9th Cir. 1992) ............................................................... 24

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................. 5

*NLRB v. Express Pub. Co.*,
  312 U.S. 426 (1941) ............................................................................... 25

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ................................................................................. 6

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

|  | **Page(s)** |
|---|---|

**FEDERAL CASES (CONT.)**

*Olmstead v. L. C. by Zimring*,
   527 U.S. 581 (1999) .................................................................. 16, 17

*Reno Air Racing Ass'n, Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ............................................................. 23

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ........................................................................... 6

*Robinson v. California*,
   370 U.S. 660 (1962) ........................................................................... 7

*Rodriguez by Rodriguez v. City of New York*,
   197 F.3d 611 (2d Cir. 1999) ........................................................ 16, 17

*Rose v. Rhorer*,
   No. 13-cv-03502-WHO, 2014 U.S. Dist. LEXIS 64550 (N.D. Cal.
   May 9, 2014)................................................................................ 15, 16

*Schmidt v. Lessard*,
   414 U.S. 473 (1974) ......................................................................... 23

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .......................................................... 20

*Townsend v. Quasim*,
   328 F.3d 511 (9th Cir. 2003) ...................................................... 11, 15

*Union Pac. R.R. v. Mower*,
   219 F.3d 1069 (9th Cir. 2000) .......................................................... 22

*United States v. DeAngelo*,
   No. SACV03-251GLT(MLGX), 2003 WL 23676571 (C.D. Cal. June
   26, 2003) ........................................................................................... 24

*Van Dyke v. Regents of Univ. of Cal.*,
   815 F.Supp. 1341 (C.D. Cal. 1993)................................................... 24

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ............................................................... 5, 18, 20

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-iv-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

**Page(s)**

**STATE CASES**

*Allen v. City of Sacramento*,
  234 Cal.App.4th 41 (2015) ..................................................................... 7

*In re Eichorn*,
  69 Cal.App.4th 382 (1998) ................................................................... 20

*Tobe v. City of Santa Ana*,
  9 Cal.4th 1069 (1995) ............................................................................ 7

**FEDERAL STATUTES**

42 United States Code
  section 12132 ....................................................................................... 10

**STATE STATUTES**

California Welfare & Institutions Code
  section 5001 ......................................................................................... 17
  section 5510 ......................................................................................... 17
  section 5600 ......................................................................................... 17

California Penal Code
  section 647(e) ................................................................................. 1, 23

Laguna Beach Municipal Code
  sections 8.30.030 ........................................................................... 1, 23

**RULES**

Federal Rules of Civil Procedure
  rule 65 .......................................................................................... 22, 23
  rule 65(d) ...................................................................................... 22, 24
  rule 65(d)(1)(B)-(C) ............................................................................ 22

**REGULATIONS**

28 Code of Federal Regulations
  section 35.130(h) ................................................................................. 13
  section 35.139(a) ................................................................................. 13
  section 35.149 ............................................................................... 10, 14
  section 35.150(a)(3) ....................................................................... 11, 15

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-v-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

**Page(s)**

**OTHER AUTHORITIES**

11A Charles A. Wright *et al.*, *Fed. Prac. & Proc.*
§ 2955 (2d ed.)......................................................................................... 23

Rutan & Tucker, LLP
attorneys at law
130/053733-0651
9095012.5 a01/06/16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

# 1.0   Introduction

## 1.1   Plaintiffs' motion

Plaintiffs' Motion for Preliminary Injunction ("Motion") seeks not to preserve, but rather to dramatically alter the status quo by restraining the City of Laguna Beach and its Police Department pending the trial of this action—which at Plaintiffs' request is now set for over a year away in February 2017—"from enforcing or threatening to enforce—either through written citation and/or warnings, verbal warnings, and/or threats, or general intimidation and/or harassment where no other alleged violation of law is suspected—California Penal Code section 647(e) and Laguna Beach Municipal Code sections 8.30.030, [and] 18.05.020 against disabled, homeless individuals in public outdoor places."  Dkt. #29-2 at 1:18-23.  The proposed injunction would further restrain Defendants "from discriminating against the disabled, homeless individuals by reason of their disability."  *Id*.

For the reasons set forth below, and particularly considering the early stage of the case and the inadequate state of the record, Plaintiffs' Motion should be denied.

## 1.2   Preliminary statement

The American Civil Liberties Union ("ACLU") apparently believes that the best long-term solution to the plight of the homeless within our communities is permanent supportive housing, *i.e.*, individualized housing accompanied by supportive services, such as mental health treatment and case management.  Its belief in this regard is not without some merit.  But rather than working through the political process and supporting the ongoing efforts of private groups to accomplish that solution, the ACLU seeks to impose on the City of Laguna Beach a legal mandate to do so.  The ACLU contends that the affirmative (and unmatched) efforts of the City to provide shelter and support to the homeless within its borders somehow discriminate against those who suffer from mental (and perhaps physical) disabilities which, according to the ACLU, make it difficult for such individuals to conform to the rules of behavior for the City's shelter and/or to tolerate the

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-1-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

"stressful" conditions of the shelter.  The ACLU's misguided tactics are destined to fail for a host of reasons, most notably that neither the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Eighth Amendment to the United States Constitution, nor any other law can be stretched to require the City to fundamentally alter the benefits and services the City now provides to the homeless by providing permanent supportive housing.  For this reason alone, the Plaintiffs' Motion should be denied—as Plaintiffs simply have not shown, and cannot show, that they are likely to prevail on the merits of their claims.

But beyond this, Plaintiffs have not shown that they will suffer any harm—much less irreparable harm—if the requested injunction is not entered, nor that the public interest would be served by such an injunction.  The City of Laguna Beach has developed one of the most caring, compassionate, and successful approaches to assisting its homeless population in the State of California.  Far from the militant police force described by Plaintiffs, the City's law enforcement officers focus—both by policy and in practice—on sheltering, rehabilitating, and connecting homeless individuals with their families and with the variety of available services that are funded by the City, as well as the county, state, and federal governments.  They issue citations for violation of the laws at issue in this litigation only as a last resort, and even then the aim of the citations is to connect the individual to the County's Collaborative Courts program—which includes programs such as Homeless Outreach Court, Drug Court, DUI Court, Veterans Treatment Court and Mental Health Court.  The goal is to encourage individuals to participate in the vast network of services available to them.

The requested injunction would:

- Bar the City from making any effort to encourage homeless individuals to find safe, legal places to sleep off of the streets and beaches and out of the parks, and away from the elements;

- Encourage the homeless to camp out in public places without

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-2-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

consistently making an effort to utilize the City's shelter or otherwise participate in the programs and services offered to the homeless, despite the fact that such programs are clearly working, as demonstrated by the Plaintiffs themselves—since this lawsuit was filed, one plaintiff has been placed into permanent supportive housing and two others have been matched for the same; and

- Establish the City as a magnet for all manner of disruptive and destructive public camping by homeless individuals from throughout the county—which is exactly what happened during a previous temporary cessation of enforcement of the laws at issue.

The City understands the daunting challenges confronting disabled, homeless persons, and believes that appropriate governmental intervention is warranted as a matter of good public policy and responsible social concern. However, granting this Motion would *dissuade* Laguna Beach—and other cities throughout California— from taking the laudable steps that Laguna Beach has taken to help its vulnerable citizens. Plaintiffs' Motion should be denied.

### 1.3    Factual background

The City of Laguna Beach is the only city in Orange County that has established, funds and operates a year-round emergency shelter for homeless individuals. Decl. of John Pietig ("Pietig Decl.") ¶ 24; Decl. of Lawrence G. Haynes, Jr. ("Haynes Decl.") ¶ 6. It has done so continuously since 2009. Pietig Decl. ¶¶ 9-23. In doing so, the City has recognized the needs of homeless individuals and has continually endeavored to provide facilities and programs to address homelessness within its borders. The City collaborates with governmental partners, the courts, nonprofit agencies and organizations, and members of the local community to offer a wide array of supportive services to homeless persons living in Laguna Beach. Decl. of Jason Farris ("Farris Decl.") ¶¶ 7, 13.

Each year, the City spends substantial funds for the operation of its shelter,

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-3-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1    known as the Alternative Sleeping Location ("ASL").  After initially investing

2    $325,000 to create the facility, the City expends approximately $350,000 a year to

3    operate the ASL.  Pietig Decl. ¶ 24.  The ASL provides a heated and cooled building

4    with restrooms, showers, meals, laundry facilities, sleeping mats, blankets, computer

5    and Internet access, a secure storage area, a safe environment and a case management

6    worker, and there is van transportation to and from downtown Laguna Beach.  *Id.*;

7    *see* Decl. of Emma Ferreira ("Ferreira Decl.") ¶ 7.  The ASL facility has ramps,

8    doorways and restroom facilities designed to meet the accessibility requirements of

9    the Americans with Disabilities Act, and the City is not aware of any complaint to

10   the contrary.  Decl. of Wade Brown ¶¶ 7-9.

11          Funding provided by the City of Laguna Beach, through grants to homeless-

12   specific and non-homeless-specific entities, further supports services and programs

13   that homeless individuals and families may access, including:  case management;

14   substance abuse treatment; mental health treatment; medical treatment (including

15   HIV/AIDS); a day laborer work site; legal assistance; a food pantry; employment;

16   and emergency, transitional and permanent housing resources.  Pietig Decl. ¶ 25.

17   The City also funds "Project Homecoming," a program to reconnect and relocate

18   homeless individuals with their families, friends or others for support and more

19   stable living arrangements.  To date, the City of Laguna Beach has helped to reunify

20   more than 70 homeless individuals with their families.  *Id.* ¶ 26; Farris Decl. ¶ 17.

21          The City also has designated a Community Outreach Officer in the Laguna

22   Beach Police Department, Corporal Jason Farris, who focuses almost exclusively on

23   homeless-related issues in the City and outreach efforts.  Farris Decl. ¶¶ 5-7.

24   Corporal Farris works closely with public and non-profit social service organizations,

25   law enforcement agencies and the criminal justice system to connect individuals with

26   much needed services such as mental health and substance abuse services, short-term

27   shelter and long-term housing.  *Id.*  He works to ensure and improve the quality of

28   life for all housed and unhoused residents of Laguna Beach by, among other means,

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-4-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1   training officers regarding mental health and homeless issues and lawfully enforcing

2   state and local laws that are intended to preserve and protect the public health, safety

3   and general welfare of the City's residents and visitors.  *Id.* ¶¶ 5-10.

4        Plaintiffs insinuate that the City has recently "ramped up" enforcement of

5   three anti-camping laws.  Pls.' Mem. P.&A. at 9:26-28.  However, there has been no

6   measurable uptick in enforcement of these laws.  Decl. of Jason Kravetz ("Kravetz

7   Decl.") ¶¶ 6-9.  Nonetheless, due to recent camping activities in City flood control

8   channels, the City has begun more actively monitoring of the channels and

9   surrounding areas, although there have not been any citations issued to persons who

10  have been found inside the channels.  *Id.* ¶ 11.

11       **1.4   General standards for preliminary injunction**

12       "A preliminary injunction is an extraordinary remedy never awarded as of

13  right."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a

14  preliminary injunction must establish that he is likely to succeed on the merits, that

15  he is likely to suffer irreparable harm in the absence of preliminary relief, that the

16  balance of equities tips in his favor, and that an injunction is in the public interest."

17  *Id.* at 20.  When the government is a party, these last two factors merge.  *Nken v.*

18  *Holder*, 556 U.S. 418, 435 (2009).

19       Because it is a threshold inquiry, when "a plaintiff has failed to show the

20  likelihood of success on the merits, [the Court] 'need not consider the remaining

21  three [*Winter* elements].'"  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v.*

22  *Harris*, 729 F.3d 937, 944 (9th Cir. 2013), quoting *DISH Network Corp. v. F.C.C.*,

23  653 F.3d 771, 776-777 (9th Cir. 2011).

24       When as here an injunction is sought to enjoin the activities of a state or local

25  government, including that of a police department, the Supreme Court has repeatedly

26  urged great caution and respect for the principle of federalism:

27       When a plaintiff seeks to enjoin the activity of a government agency,

28       even within a unitary court system, his case must contend with "the

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-5-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1    well-established rule that the Government has traditionally been

2    granted the widest latitude in the 'dispatch of its own internal affairs,'

3    *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 896 (1961)," quoted in

4    *Sampson* v. *Murray,* 415 U.S. 61, 83 (1974).  The District Court's

5    injunctive order here, significantly revising the internal procedures of

6    the Philadelphia police department, was indisputably a sharp limitation

7    on the department's "latitude in the 'dispatch of its own internal

8    affairs.'"

9    *Rizzo v. Goode*, 423 U.S. 362, 379-380 (1976); see also *O'Shea v. Littleton*, 414 U.S.

10   488, 502 (1974) [". . . such a major continuing intrusion of the equitable power of the

11   federal courts into the daily conduct of state criminal proceedings is in sharp conflict

12   with the principles of equitable restraint which this Court has recognized"]; *Hodgers-*

13   *Durgin v. de la Vina*, 199 F.3d 1037, 1042-1043 (9th Cir. 1999) [same].

14   **2.0    Plaintiffs are unlikely to succeed on the merits of their claims.**

15   Plaintiffs' Motion is predicated on the their allegations that the City has

16   violated their rights under the Eighth Amendment and under the ADA and the

17   Rehabilitation Act.  Plaintiffs are unlikely to succeed on the merits of any of these

18   claims and on that basis alone, their Motion should be denied.

19   **2.1    Plaintiffs are unlikely to succeed on their Eighth Amendment claims**

20   **because the state and local laws in question do not punish status.**

21   Plaintiffs contend they are likely to succeed on their claim that the City has

22   violated the Eighth Amendment's proscription on cruel and unusual punishment

23   because the City has criminalized the status of being disabled and homeless and the

24   City has criminalized involuntary acts that are inseparable from such alleged status.

25   Initially, Plaintiffs' arguments lack factual support for the simple reason that

26   they are predicated on a mischaracterization of the City's homeless program.  (*See*

27   Section 1.3 above.)  Plaintiffs' inaccurate, incomplete and misleading description of

28   the City's efforts to address homelessness within its borders taints the purported

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-6-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1   analysis of the issue and cannot support the issuance of the requested relief.

2          Plaintiffs' claims also lack legal support.  *Ingraham v. Wright*, 430 U.S. 651

3   (1977) identifies multiple possible bases for a claim of cruel and unusual

4   punishment; however, Plaintiffs rely solely on the criteria relating to the imposition

5   of "substantive limits on what can be made criminal and punished as such."  Pls.'

6   Mem. P.&A. at 11:11-14.  The Supreme Court has emphasized that this part of the

7   test is "to be applied sparingly."  *Ingraham*, 430 U.S. at 667.  Here, neither the

8   applicable legal principles nor the abstract and general "evidence" presented by

9   Plaintiffs substantiates their claim that the City has unconstitutionally criminalized

10  either status or conduct allegedly inseparable from such status.

11         Other than their citation to *Robinson v. California*, 370 U.S. 660 (1962), which

12  struck down a statute making it unlawful to be addicted to narcotics, Plaintiffs'

13  papers are devoid of authority holding that homelessness is a constitutionally

14  recognized status.  Pls.' Mem. P.&A. at 10:13-13:15.  The reason for this glaring

15  omission is clear:  in cases challenging the validity of anti-camping laws as to public

16  property, both on their face and as applied, courts routinely conclude that

17  homelessness is not a status for the purpose of the Eighth Amendment.  *E.g.*, *Lehr v.*

18  *City of Sacramento*, 624 F.Supp.2d 1218, 1222 (E.D. Cal. 2009); *Joyce v. City &*

19  *County of San Francisco*, 846 F.Supp. 843, 857-858 (N.D. Cal. 1994) [refusal to find

20  status based on alleged failure of city to provide sufficient housing for the homeless];

21  *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1105-1106 (1995); *Allen v. City of*

22  *Sacramento*, 234 Cal.App.4th 41, 59 (2015) ("What constitutes a status 'might elude

23  perfect definition,' but factors such as the involuntary acquisition of the

24  characteristic (including whether the characteristic was present at birth) and the

25  degree to which the person has control over that characteristic determine whether a

26  characteristic is a status.").

27         And to the extent that Plaintiffs are suggesting that being ***disabled*** and

28  homeless is a status, the outcome is the same.  As demonstrated below in Section 2.2,

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-7-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  Plaintiffs fail to show that they are disabled within the meaning of the ADA and the
2  Rehabilitation Act, and that by reason of such disability they have been excluded
3  from or denied the benefits of the ASL.

4      Plaintiffs also fail to meet their burden to establish that each and every
5  member of their proposed class is involuntarily compelled by necessity to sleep
6  overnight on public property in Laguna Beach—*i.e.*, that they have no choice in
7  doing so.  This certainly is not the case with Plaintiff Miller, who satisfies the locals
8  preference criteria[1] and is entitled to stay every evening at the ASL, or with Plaintiffs
9  Glover, Holbrook and Miller, who have been accepted into permanent supportive
10 housing (Ferreira Decl. ¶¶ 22, 27, 28), or with Plaintiff Frederes, who is incarcerated.
11 Other named Plaintiffs admit to being new to Laguna Beach, not having arrived until
12 after the ASL was established, not having any prior connection or ties to Laguna
13 Beach, and presumably being residents elsewhere.  Yet all of them have stayed
14 hundreds of times at the ASL.  Further, there is no evidence that all members of the
15 proposed class have pursued and exhausted available alternatives to sleeping in
16 public, including assistance (financial and otherwise) from the federal, state and
17 county governments who are responsible for general welfare programs, families and
18 friends, and nonprofit organizations.

19     Plaintiffs also allege that the City cites individuals when they cannot access
20 the ASL or avail themselves of "safe" place to sleep.  Pls.' Mem. P.&A. 9:1-13.
21 However, that is not entirely accurate.  On most occasions when some of the
22 Plaintiffs have been cited, they either did not even attempt to access the ASL or
23 voluntarily left the shelter.  Ferreira Decl. ¶¶ 32-35, 38-41.  In other situations, the
24 alleged citations are in fact warnings or administrative citations, which carry no

25

26 [1]  And the success of the City's homeless program with respect to individuals who
   meet the criteria is readily evident.  When the ASL was established in 2009, its
27 capacity (45 persons) was correlated with estimated of the historical local homeless
   population.  Pietig Decl. Ex. 7; *see* Johnson Decl. Ex. G at 47 (44 persons).  Six
28 years later, the average number of homeless persons regularly staying at the ASL and
   who meet the locals preference criteria is below 20.  Farris Decl. ¶ 24.

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

threat of jail time.  Decl. of Jeffrey Aiken, ¶ 9, Ex. A; Decl. of Kenneth Glover, ¶ 9, Ex. A; Decl. of Lisa Holbrook, ¶ 11; Farris Decl. ¶ 12.  Further, in one situation, Plaintiff Frederes was given the opportunity to participate in a program that could lead to housing, thanks to the efforts of Corporal Farris, but shortly afterward voluntarily exited the program, demonstrating that there are often options available other than staying on the street.  Farris Decl. ¶ 26.

In short, the relevant state and local criminal laws—the enforcement of which Plaintiffs seek to enjoin—pertain not to status, but to acts and conduct that properly may be punished.  Plaintiffs attempt to avoid this outcome by arguing that such acts and conduct are somehow indistinguishable from their status.  Pls.' Mem. P.&A. at 13:16-15:4.  Yet again, Plaintiffs offer no authority supporting their argument.

Courts have routinely recognized that there is an important distinction between laws that criminalize status and laws that criminalize conduct even if that conduct may be derivative of a person's status, finding that the latter typically do not run afoul of the Eighth Amendment.  *Lehr*, *supra*, 624 F.Supp.2d at 1224-1234 provides an extensive and compelling analysis of this point.  The *Lehr* court acknowledges the vacated decision in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated* by 505 F.3d. 1006 (9th Cir. 2007), cited by Plaintiffs, but convincingly exposes the questionable rationale of the 2-1 decision as demonstrated by the "powerful dissent."  624 F.Supp.2d at 1226-1227.  In words equally applicable to the case at hand, "[t]here is no question that homelessness is a serious problem and the plight of the homeless, a cause for serious concern.  Yet this does not give us license to expand the narrow limits that, in a 'rare type of case,' the Cruel and Unusual Punishment Clause of the Eighth Amendment places on substantive criminal law."  444 F.3d at 1138-1139 (Rymer, J., dissenting).

The *Lehr* court also observed that relief of the type sought by Plaintiffs under the Eighth Amendment

would set precedent for an onslaught of challenges to criminal

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-9-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  convictions by those who seek to rely on the involuntariness of their
2  actions.  It would potentially provide constitutional recourse to anyone
3  convicted on the basis of conduct derivative of a condition he is
4  allegedly 'powerless to change.'  While this Court is sympathetic to
5  the plight of Plaintiffs in this case, as well as to that of all individuals
6  who are without shelter, a decision in favor of Plaintiffs today would
7  be dangerous bordering on irresponsible.

8  624 F.Supp.2d at 1234.

9      At bottom, Plaintiffs' claim of cruel and unusual punishment under the Eighth
10 Amendment lacks merit and, as a result, cannot support the requested preliminary
11 injunction.  Furthermore, any consideration of the nature and scope of the provisional
12 relief sought by Plaintiff—shutting down the City's enforcement of state and
13 municipal laws designed to protect the health, safety and welfare of City residents—
14 should occur only after a rigorous review of a robust and complete evidentiary
15 record, not the skewed and limited presentation offered up by Plaintiffs.

16     **2.2    Plaintiffs are unlikely to succeed on their ADA and Rehabilitation**
17           **Act claims.**

18     Plaintiffs are no more likely to prevail on their ADA and Rehabilitation Act
19 claims.  The ADA provides that "no qualified individual with a disability shall, by
20 reason of such disability, be excluded from participation in or be denied the benefits
21 of the services, programs, or activities of a public entity, or be subjected to
22 discrimination by any such entity."  42 U.S.C. § 12132.  The regulations
23 promulgated under the ADA provide slightly more clarity:  "[N]o qualified
24 individual with a disability shall, because a public entity's facilities are ***inaccessible***
25 ***to or unusable by individuals with disabilities***, be excluded from participation in, or
26 be denied the benefits of the services, programs, or activities of a public entity, or be
27 subjected to discrimination by any public entity."  28 CFR § 35.149.

28     To establish a violation of Title II of the ADA or Section 504 of the

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-10-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

Rehabilitation Act, Plaintiffs must prove that (1) they are qualified individuals with disabilities, (2) they were excluded from participation in or otherwise discriminated against with regard to the City's services, programs, or activities, and (3) such exclusion or discrimination was by reason of Plaintiffs' disabilities. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (test for ADA claims); *McGary v. City of Portland*, 386 F.3d 1259, 1269 (9th Cir. 2004) ("[T]here is no significant difference in the analysis of rights and obligations created by" the ADA and the Rehabilitation Act). Plaintiffs must also prove that a reasonable accommodation is available. *Cmtys. Actively Living Indep. & Free v. City of Los Angeles*, No. 09-0287, 2011 U.S. Dist. LEXIS 118364, at *35 (C.D. Cal. Feb. 10, 2011).

Importantly, the reasonable accommodation proposed by Plaintiffs must not constitute a ***fundamental alteration*** of the program or service offered by the City nor an entirely new program not previously offered by the City. 28 CFR § 35.150(a)(3) (the ADA "does not . . . [r]equire a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens."); *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) ("[P]ublic entities are ***not required to create new programs that provide heretofore unprovided services*** to assist disabled persons. . . . Nor, ordinarily, must public entities make modifications that would ***fundamentally alter existing programs and services*** administered pursuant to policies that do not facially discriminate against the disabled.") (emphasis added).

Plaintiffs are unlikely to establish the prima facie elements of their ADA and Rehabilitation Act claims. But regardless of Plaintiffs' showing, their claims will fail because the relief that they seek would fundamentally alter the nature of the service provided by the City and force the City to create an entirely new service, which is not required by either the ADA or the Rehabilitation Act.

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-11-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

### 2.2.1   The Court cannot conclude that Plaintiffs are likely disabled because they have submitted no competent evidence of their alleged disabilities.

As an initial matter, Plaintiffs' evidence of their alleged disabilities consists entirely of inadmissible hearsay[2] and Plaintiffs' unqualified, non-expert opinions of their own mental (and in a few cases, physical) health.[3]   Plaintiffs have provided no admissible evidence to allow this Court to conclude that Plaintiffs are likely to prove that they—much less the purported class that they seek to represent—are disabled within the meaning of the ADA and/or the Rehabilitation Act.

### 2.2.2   Plaintiffs are not denied—but in fact have affirmatively received—the benefit of the ASL provided by the City.

Contrary to Plaintiffs' assertion, the City has not denied Plaintiffs the benefit of the ASL.  Six of the seven Plaintiffs have stayed at the ASL *between 100 and 600 times.  See* Ferreira Decl. ¶¶ 22-28 (showing that Mr. Aiken stayed at the ASL at least 274 times, Ms. Aune 202 times, Mr. Frederes 37 times, Mr. Glover 161 times, Ms. Holbrook 605 times, Mr. Miller 427 times, and Mr. Sestini 294 times).  Mr. Glover no longer uses the ASL because he has obtained permanent housing at the Friendship Shelter, and therefore has a different safe, legal place to sleep.  *Id.* ¶ 22. Mr. Frederes, who was previously prohibited from staying at the ASL because of his repeated violent outbursts that consistently endangered the safety of the ASL's staff and residents, is currently serving four years in prison for assaulting Mr. Aiken with a deadly weapon.  Ferreira Decl. ¶ 47; Farris Decl. ¶ 26.  Whether he is eligible to stay at the ASL is therefore a moot issue.  Of the seven plaintiffs, only Mr. Sestini is currently prohibited, but otherwise eligible to stay there, due to his long history of

---

[2] *See, e.g.*, Aiken Decl. ¶ 3; Aune Decl. ¶ 3; Frederes Decl. ¶ 2; Glover Decl. ¶ 2; Holbrook Decl. ¶ 3; Miller Decl. ¶ 3; Sestini Decl. ¶¶ 2, 3 (alleged diagnoses by unidentified doctors).
[3] *See, e.g.*, Aiken Decl. ¶¶ 3–5, 7; Aune Decl. ¶¶ 3, 4, 6, 10; Frederes Decl. ¶¶ 2, 3, 13; Glover Decl. ¶¶ 2, 5, 7, 8; Holbrook Decl. ¶¶ 3, 6, 10; Miller Decl. ¶¶ 3, 4; Sestini Decl. ¶¶ 2, 3, 6, 9.

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-12-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1    violence and disruption at the shelter.  Ferreira Decl. ¶ 48.

2    **2.2.3  To the extent that any of Plaintiffs do not receive the benefit**

3    **of the ASL, that is by reason of their own choices and actions,**

4    **not their alleged disabilities.**

5    Even assuming that one or more of the Plaintiffs is disabled, and that one or

6    more of them has been denied the benefit of the ASL, no such denial is by reason of

7    any alleged disability.  Plaintiffs argue that they are denied the benefit of the ASL as

8    a result of their alleged disabilities in two ways.  First, Plaintiffs argue that certain of

9    them have been temporarily or permanently prohibited from staying at the ASL as a

10   result of their failure to comply with the ASL's safety rules.  *See* Pls.' Mem. P.&A.

11   at 20:5–15; Aune Decl. ¶ 7; Frederes Decl. ¶ 6; Holbrook Decl. ¶ 7; Miller Decl. ¶ 9;

12   Sestini Decl. ¶ 6.  Second, Plaintiffs argue that staying at the ASL exacerbates their

13   alleged mental health problems.  Pls.' Mem. P.&A. at 20:3–5, 20:15–18; Aiken Decl.

14   ¶ 7; Aune Decl. ¶ 6; Frederes Decl. ¶ 6; Glover Decl. ¶ 5, 7; Holbrook Decl. ¶ 6;

15   Miller Decl. ¶ 8; Sestini Decl. ¶ 6.  Even if the underlying factual premises could be

16   established—and they cannot—neither argument would establish liability under the

17   ADA or the Rehabilitation Act.

18   First, the ADA expressly ***permits*** the City to exclude from the ASL anyone—

19   whether disabled or otherwise—who does not comply with the rules and regulations

20   adopted to ensure the safe operation of the ASL.  Specifically, the City may "impose

21   legitimate safety requirements necessary for the safe operation of its services,

22   programs, or activities" so long as those requirements "are based on actual risks, not

23   on mere speculation, stereotypes, or generalizations about individuals with

24   disabilities."  28 CFR § 35.130(h).  Moreover, the ADA "does not require a public

25   entity to permit an individual to participate in or benefit from the services, programs,

26   or activities of that public entity when that individual poses a direct threat to the

27   health or safety of others."  28 CFR § 35.139(a).

28   Here, the City has established a comprehensive set of rules, many of which are

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-13-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  designed to ensure the health and safety of all guests of the ASL.  Ferreira Decl. ¶ 11

2  Ex. A.  Each guest is expressly advised of these rules and affirmatively agrees to

3  abide by them as a condition of staying at the ASL.  *Id.*  Importantly, these rules

4  apply to **all** guests, not just to those with disabilities.  *Id.*

5       A guest is only asked to leave the ASL if he or she persists in violating those

6  rules, thereby posing a threat to the health and safety of the ASL staff, other guests,

7  or both.  Ferreira Decl. ¶¶ 45-46.  The decision to ask a guest to leave is based on an

8  individualized assessment of the individual's conduct, not on any "speculation,

9  stereotypes, or generalizations about individuals with disabilities."  *Id.* ¶ 46.  If a

10 guest repeatedly refuses to abide by the shelter's safety regulations on multiple

11 occasions, the ASL staff may prohibit the individual from returning for a period of

12 time.  *Id.*  And if the individual proves a consistent danger to the staff and guests

13 when he or she stays at the ASL, then he or she may be prohibited from staying at the

14 shelter indefinitely.  *Id.*  The City's treatment of Ms. Aune, Mr. Frederes, Ms.

15 Holbrook, Mr. Miller, and Mr. Sestini was no different.  *Id*. ¶¶ 47-49.  In each case,

16 the City's decisions were fully consistent with the ADA.

17      As to Plaintiffs' assertions that the ASL's conditions negatively affect their

18 mental health, the only evidence offered by Plaintiffs are (1) Plaintiffs' own

19 untrained assessments of their mental health conditions and (2) the declaration of

20 purported expert Benjamin F. Henwood, who has not examined any of the Plaintiffs

21 and apparently has never even seen the conditions of the ASL.  As discussed more

22 fully in the City's objections to Plaintiffs' evidence, filed concurrently with this

23 opposition, neither Plaintiffs' opinions nor those of Dr. Henwood are proper,

24 admissible expert opinions.  Accordingly, Plaintiffs simply have not shown that they

25 are likely to establish that the ASL's conditions negatively affect their mental health.

26      Moreover, even if the ASL did have an adverse effect on Plaintiffs' health—

27 and there is no competent evidence that it does—that would not mean that the ASL is

28 "inaccessible to or unusable" within the meaning of the ADA.  *See* 28 CFR § 35.149.

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

At most, Plaintiffs may establish that the services offered by the ASL may be less beneficial to certain disabled, homeless individual than they are to other homeless individuals.  But Plaintiffs will not be able to show that the ASL is "inaccessible or unusable" by Plaintiffs.

Accordingly, Plaintiffs have not shown that they are likely to prove that they have been denied the benefit of the ASL by reason of any alleged disability—even assuming that one or more of the Plaintiffs is indeed disabled.

### 2.2.4  Plaintiffs have not identified an available reasonable accommodation because the relief that they request would fundamentally alter the nature of the service provided by the City.

Finally, and perhaps most importantly, even if Plaintiffs could establish that they are disabled, that they are denied a benefit of the ASL, and that any such denial is by reason of their disabilities, Plaintiffs still cannot prevail on their ADA and Rehabilitation Act claims because the relief they seek—permanent supportive housing—is clearly a ***fundamental alteration*** of the benefit provided by the ASL:  a safe, temporary shelter for individuals to sleep.  Permanent supportive housing would actually be an entirely new service that the City has never before provided.  The ADA simply cannot be stretched to require the City to provide the relief requested by Plaintiffs.  *See* 28 CFR § 35.150(a)(3); *Townsend*, *supra,* 328 F.3d at 518.

The Northern District of California recently came to this very conclusion in a similar case challenging the City of San Francisco's homeless shelter system.  San Francisco funds several shelters for homeless individuals to lodge temporarily (for up to 90 days) and maintains a waiting list so that as one individual's time to remain at the shelter expires, another individual on the waiting list is offered a space at the shelter.  *Rose v. Rhorer*, No. 13-cv-03502-WHO, 2014 U.S. Dist. LEXIS 64550, at * 3, 8–9 (N.D. Cal. May 9, 2014).  Several disabled, homeless individuals sued the city and related defendants, seeking "various changes to the shelter system, including

Rutan & Tucker, LLP
attorneys at law

-15-

130/053733-0651
9095012.5 a01/06/16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  automatic shelter extensions, transformation of shelter beds into medical respite

2  beds, and dedicated shelters for people with disabilities." *Id.* at *6.  The city moved

3  for summary judgment on the ground that the plaintiffs' requested relief would

4  constitute a fundamental alteration of the city's shelter system.

5      The court in *Rose* agreed with the city.  It found that—like the City's ASL at

6  issue here—"[t]he emergency adult shelter system is intended to provide short-term

7  support for homeless adults so that they can obtain a permanent housing placement;

8  it is not intended to provide long-term housing for homeless adults." *Id.* at 5; *see*

9  Pietig Decl. Ex. 2, 3, 6  Therefore, the *Rose* plaintiffs' requested relief "would

10 fundamentally alter San Francisco's emergency adult shelter program, ***transforming***

11 ***it into long-term housing for a small group of people with disabilities***, and [was]

12 therefore not required by the ADA." *Id.* at *13 (emphasis added).  As in *Rose*, the

13 Plaintiffs here seek to transform the City's temporary shelter into long-term housing

14 specifically for individuals with disabilities.  As the court succinctly concluded in

15 *Rose*, such a transformation is "not required by the ADA."

16      The Second Circuit came to a similar conclusion when faced with a claim by a

17 class of mentally disabled individuals asserting that the City of New York should be

18 required to add to its list of Medicaid-related services a "safety monitoring service."

19 *See Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999).  The

20 plaintiffs in that case argued that because the city offered no such service, they were

21 effectively denied the benefit of the city's broadly defined group of "personal care

22 services." *Id.* at 618.  The court criticized the plaintiffs for "fail[ing] to focus on the

23 particular services provided by appellants," characterizing the plaintiffs' claim as

24 asserting that "the provision of Medicaid-funded services to one group of disabled

25 persons discriminated against other disabled persons who need ***different*** services."

26 *Id.* (emphasis added).  It reasoned that the ADA requires only that the government

27 "adhere to the ADA's nondiscrimination requirement with regard to the services ***they***

28 ***in fact provide***." *Id.* (quoting *Olmstead v. L. C. by Zimring*, 527 U.S. 581 (1999))

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-16-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1   (emphasis by *Rodriguez* court).  Therefore, "New York cannot have unlawfully

2   discriminated against appellees by denying a benefit that it provides to no one."

3       The Second Circuit's reasoning applies with equal force here.  Like the

4   plaintiffs in *Rodriguez*, Plaintiffs seek to require the City to offer an entirely new

5   service—permanent supportive housing for disabled, homeless individuals.  They

6   justify that request by arguing that they are denied the benefits of the City's broadly

7   defined "homelessness program" because of their disability.  But in addressing

8   Plaintiffs' ADA and Rehabilitation Act claims, the Court must focus on "the

9   particular services provided by [the City]"—*i.e.*, temporary shelter—not the

10  amorphous "homelessness program" asserted by Plaintiffs.  *Id.*; *see also Alexander v.*

11  *Choate*, 469 U.S. 287, 303 (1985) (Medicaid "benefits" under the Rehabilitation Act

12  [and, similarly, the ADA] are "the individual services offered" not the "amorphous

13  objective of 'adequate health care'").  When properly analyzed through that lens, it is

14  clear that the City has not discriminated against Plaintiffs or any other disabled,

15  homeless individuals by not offering them permanent supportive housing, because it

16  does not offer that benefit to **any** homeless individuals.

17      *Olmstead*, *supra*, 527 U.S. 581 is significant for yet another important reason.

18  Plaintiffs assume, without reference to legal authority, that the City, as a municipal

19  entity, is obligated to provide permanent supportive housing to Plaintiffs owing to

20  their alleged mental disabilities.  However, it is the federal government and the states

21  (and, in the case of California, through their counties and implementing legislation)

22  that have the responsibility for the delivery of general welfare services and the duty

23  to provide institutionalization and treatment for persons with mental illnesses and

24  other disabilities as well as alternatives to such facilities.  *E.g.*, Cal. Welf. & Inst.

25  Code §§ 5001, 5510, 5600.

26      In any event, even assuming that Plaintiffs can establish that they are disabled

27  within the meaning of the ADA or the Rehabilitation Act, they have not shown that

28  they are likely to prove that they have been denied the benefit of the ASL, that any

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-17-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  such denial is by reason of any alleged disability, or that their requested relief is a

2  reasonable accommodation that would not constitute either a completely new service

3  or a fundamental alteration of the City's existing services.  Indeed, on this last issue,

4  it is quite clear that Plaintiffs cannot prevail as a matter of law.  For all of these

5  reasons, Plaintiffs' Motion should be denied.

6  **3.0      Plaintiffs fail to show they are likely to suffer irreparable harm.**

7           Even were Plaintiffs here able to establish that they are likely to prevail on the

8  merits—and they are not—the Court would still be called upon to consider the

9  remaining *Winter* factors, and Plaintiffs therefore would need to demonstrate that

10  irreparable injury is ***likely*** in the absence of an injunction.  *Winter*, *supra*, 555 U.S. at

11  22.  "Speculative injury does not constitute irreparable injury sufficient to warrant

12  granting a preliminary injunction."  *Caribbean Marine Servs. Co. v. Baldrige*, 844

13  F.2d 668, 674 (9th Cir. 1988).

14           Here, Plaintiffs have not demonstrated the likelihood of irreparable harm in the

15  absence of their requested preliminary injunction.  First, Plaintiffs' assertion of likely

16  irreparable harm rests entirely on the unsupported, and inadmissible, opinion of Dr.

17  Henwood.  As discussed further in the City's objections to Dr. Henwood's

18  declaration, Dr. Henwood's conclusions concerning the City's law enforcement

19  practices, their effect on Plaintiffs' mental health, and the conditions of the ASL are

20  based ***solely*** on a review of Plaintiffs' declarations.  Dr. Henwood has neither

21  examined any of the Plaintiffs nor reviewed any of their medical records.  Dr.

22  Henwood has neither reviewed any of the City's law enforcement policies or

23  practices nor interviewed any individual with knowledge of those practices (whether

24  a police officer, City employee, Plaintiff, or third-party witness).  Dr. Henwood has

25  observed neither the ASL nor any interaction between the City's law enforcement

26  and any homeless individual.  Indeed, it is not even clear whether Dr. Henwood has

27  ever been to Laguna Beach.  Nor does Dr. Henwood appear to have any relevant

28  education in, knowledge of, of experience with the effects of any law enforcement

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-18-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  policy or practice on mental health.  Dr. Henwood's conclusions are simply not

2  based on sufficient facts or expertise to render them admissible.  Accordingly,

3  Plaintiffs have offered no admissible evidence of any irreparable harm that they are

4  likely to suffer.

5          Moreover, even if there were any evidence that the enforcement of the City's

6  generally applicable laws is likely to result in some harm to Plaintiffs, an injunction

7  is not necessary to prevent any such harm because Plaintiffs—and the purported

8  class that they seek to represent—have options for safe places to sleep that do not

9  violate any laws.  For example, Plaintiff Miller is a Laguna Beach local who is

10  guaranteed space at the ASL every night and has stayed there approximately 427

11  times and, moreover, has been accepted into permanent supportive housing.  Ferreira

12  Decl., ¶ 27.  Other proposed class members who meet the locals preference criteria

13  have the same guarantee.  *Id.* ¶ 12.  Others, such as Plaintiffs Glover and Holbrook,

14  have obtained other housing arrangements such as permanent supportive housing

15  from Friendship Shelter.  *Id.* ¶¶ 22, 27, 28.  Others, such as Plaintiff Frederes, are

16  incarcerated for offenses entirely unrelated to their homelessness (Farris Decl. ¶ 26)

17  and therefore are not affected in any way by the enforcement of the City's laws.  All

18  other Plaintiffs and proposed class members (other than those, such as Plaintiff

19  Sestini, who are currently prohibited from staying at the ASL) have the opportunity

20  to stay at the ASL after all persons meeting the locals preference criteria have been

21  sheltered by taking part in a random lottery to allocate the remaining spaces at the

22  ASL.  Ferreira Decl. ¶ 12.  In fact, each of the remaining Plaintiffs (and no doubt

23  nearly every member of the proposed class) has stayed at the ASL hundreds of times.

24  (*See* Section 2.2.2, above.)  Finally, those who have no guaranteed place to sleep and

25  who are turned away from the ASL (either because there is insufficient space or

26  because they are prohibited from staying at the ASL), can stay at one of the two

27  facilities currently operating under the Orange County Cold Weather Armory

28  Emergency Shelter program; in the event a proposed class member is unable to

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

1  obtain a space in the ASL through the lottery process, he or she receives a bus pass

2  (there is an OCTA bus stop in the immediate vicinity of the ASL) and a pre-printed

3  referral form that will admit the person to one of the armories.  Ferreira Decl. ¶ 14.

4  In short, each of the Plaintiffs and proposed class members has one or more safe,

5  legal places to sleep, and none of them must resort to sleeping in public in violation

6  of the City's laws.

7       Further, even those who do sleep outside have no legitimate fear that a citation

8  for violating the State or local anti-lodging laws will result in physical custody;

9  rather, cited individuals are simply issued a Notice to Appear and the City then tries

10  to connect individuals to State and local services designed to help them (including

11  attempts to reconnect them with friends or family).  Farris Decl. ¶¶ 6, 7, 11.[4]

12       For all of these reasons, there is simply no evidence that Plaintiffs (or any

13  other purported class members) are likely to suffer any irreparable harm in the

14  absence of the injunction that they seek.

15  **4.0**    **Plaintiffs fail to show a preliminary injunction is in the public interest and**

16         **that the equities tip in their favor.**

17       When ruling on a preliminary injunction, "a court must balance the competing

18  claims of injury and must consider the effect on each party of the granting or

19  withholding of the requested relief" (*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S.

20  531, 542 (1987)) and must "weigh in its analysis the public interest implicated by

21  [an] injunction" (*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009); see

22  *League of Wilderness Defenders/Blue Mountains Biodiversity Project v.*

23  *Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) [public interest element "deserves

24  special attention in cases where the public interest may be affected"]).  In exercising

25  their sound discretion, courts of equity should pay particular regard for the public

26  consequences in employing the extraordinary remedy of injunction."  *Winter*, *supra*,

27

28  [4]  Moreover, as a last resort, cited individuals would ultimately have the opportunity
to assert and prove a defense of necessity in accordance with *In re Eichorn*, 69
Cal.App.4th 382 (1998) and thereby avoid conviction.

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-20-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

555 U.S. at 24.

Here, the balancing and weighing of relevant considerations tips sharply against the issuance of the preliminary injunction requested by Plaintiffs. Plaintiffs assert that until the time of trial, all proposed class members should be afforded the unfettered right to lodge on public property where they please or for any length of time or in any manner. There would apparently be no requirement for the Plaintiffs or class members to first seek shelter at the ASL, the National Guard armories, or any other location. Such a situation would undoubtedly result in a variety of conditions conflicting with the public health, safety and welfare. Indeed, this is exactly what happened in 2009 when Laguna Beach experienced a temporary cessation in the enforcement of State and local anti-lodging laws, which ultimately resulted in a migration of new homeless persons to Laguna Beach; the establishment of unsightly permanent encampments on public beaches and in public parks; degradation of vegetation and damage to facilities and improvements on public beaches and in public parks; increased litter and trash; increased unhygienic conditions; a diminution in the ability to use and enjoy the public beaches and parks for their intended purposes; an increase in reported crimes and inappropriate behavioral and conduct issues on public beaches and in public parks; reported complaints of unpleasant interactions between transient individuals and residents and visitors on public beaches and in public parks and the downtown area; concerns about the public's safety; and reported declines of tourism and business activities in the downtown area near public beaches and park. Pietig Decl. ¶¶ 7, 8. Contrary to Plaintiffs' assertions, there is nothing "weak or illusory" about these very real results of the prior cessation of enforcement. There is no reason to expect that the result would be any different if the Court issues the injunction requested by Plaintiffs.

The unfettered right to lodge on public property—which is effectively what Plaintiffs seek—will also have the effect of placing homeless and/or disabled individuals in harm's way. Haynes Decl. ¶ 9. For example, the Police Department

Rutan & Tucker, LLP
attorneys at law

130/053733-0651
9095012.5 a01/06/16

-21-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  has recently needed to monitor incidents of camping in enclosed flood control
2  channels, discovered following the report of a fire that started in a channel.  Kravetz
3  Decl. ¶ 10.  These activities unnecessarily expose such individuals to extremely
4  dangerous risk of personal injury or worse during storm events—a real and serious
5  concern especially in light of the current El Niño forecasts—and could create hazards
6  resulting from blockages in water flows, as has occurred during prior storms.  *Id*.

7       Against the litany of adverse consequences described above, Plaintiffs fail to
8  present **any** evidence that class members—who by Plaintiffs' own definition suffer
9  from mental and/or physical disabilities—would be in a better position if allowed to
10  remain on the streets, rather than being sheltered at the ASL or the armories, being
11  reunited with their families, or being connected to programs, services, and resources
12  designed to help homeless and/or disabled individuals.  Not even Dr. Henwood
13  makes such a startling suggestion.  Yet granting the injunction would preclude the
14  City from interacting with proposed class members to guide them into resources.

15       What Plaintiffs seek would almost certainly harm the public while providing
16  no clear benefit to Plaintiffs.  Accordingly, the balance of equities and the public
17  interest do not support issuing the requested injunction.

18  **5.0    The proposed order is uncertain and incapable of enforcement.**

19       Rule 65(d) requires "[e]very order granting an injunction" to "state its terms
20  specifically" and to "describe in reasonable detail—and not by referring to the
21  complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P.
22  65(d)(1)(B)-(C).  "'[O]ne basic principle built into Rule 65 is that those against
23  whom an injunction is issued should receive fair and precisely drawn notice of what
24  the injunction actually prohibits.'"  *Fortyune v. Am. Multi-Cinema, Inc*., 364 F.3d
25  1075, 1086-87 (9th Cir. 2004) (quoting *Union Pac. R.R. v. Mower*, 219 F.3d 1069,
26  1077 (9th Cir. 2000)).  "The Rule was designed to prevent uncertainty and confusion
27  on the part of those faced with injunctive orders, and to avoid the possible founding
28  of a contempt citation on a decree too vague to be understood."  *Ibid*. (quoting

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-22-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

2       Generally speaking, "an ordinary person reading the court's order should be

3  able to ascertain from the document itself exactly what conduct is proscribed."  11A

4  Charles A. Wright *et al.*, *Fed. Prac. & Proc.* § 2955 (2d ed.); *Columbia Pictures*

5  *Indus. v. Gary Fung*, 710 F.3d 1020, 1047-1048 (9th Cir. 2013); *see Del Webb*

6  *Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1150 (9th Cir. 2011) (quoting *Reno Air*

7  *Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) ["'The

8  benchmark for clarity and fair notice is not lawyers and judges, who are schooled in

9  the nuances of [the] law,' but instead the 'lay person, who is the target of the

10  injunction.'"].

11       Plaintiffs' requested preliminary injunction violates the specificity

12  requirements of Rule 65 and would leave the City and members of the Laguna Beach

13  Police Department "guessing as to what conduct is enjoined."  *Reno, supra,* 452 F.3d

14  at 1134.  First, the proposed injunction (Dkt. #29-2 at 1:22-23, 25-26) states that it

15  applies only to "disabled, homeless individuals."  Therefore, homeless persons who

16  are not disabled would not be subject to the proposed injunction.  Assuming that the

17  Court orders the injunction, when a police officer finds an individual in violation of

18  either Penal Code section 647(e), LBMC section 8.30.030 or LBMC section

19  18.05.020, the officer must then determine whether the offender is disabled or not.

20  Doing so is not always easy, since there is often nothing readily identifiable about a

21  disabled person.  *See Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir.

22  1995) ["there are situations in alleged disability discrimination cases where an

23  employer clearly did not know and could not have known of an employee's

24  disability"].  Having a police officer determine in the field whether an individual is

25  "disabled" or not is simply not consistent with Rule 65's requirements and would

26  leave the officers guessing at who is subject to the proposed injunction.  Decl. of

27  Chief Laura Farinella ("Farinella Decl.") ¶¶ 10-11.

28       In addition to the difficulty in determining ***who*** is subject to the proposed

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-23-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1    injunction, police officers would also be left guessing what conduct qualifies as

2    "general intimidation and/or harassment" (*see* Dkt. #29-2 at 1:20) of those who

3    qualify as "disabled, homeless individuals."  Farinella Decl. ¶ 12.  For example, is it

4    "general intimidation and/or harassment" if a police officer talks to an individual

5    who is disabled and homeless about shelter or housing options available to them, if a

6    police officer speaks to an individual about an upcoming rain storm and advises them

7    to find shelter indoors, or if a police officer speaks to an individual about trying to

8    reconnect with his/her family?  *Id*.  These are just some of the potential questions

9    that would emerge from the requested injunction, and highlight the serious

10   enforcement problems it would cause the City.  *See Federal Election Com. v.*

11   *Furgatch*, 869 F.2d 1256, 1263 (9th Cir. 1989) [a phrase which is "susceptible to a

12   number of different interpretations" violated Rule 65(d)]; *Van Dyke v. Regents of*

13   *Univ. of Cal.*, 815 F.Supp. 1341, 1346 (C.D. Cal. 1993) [relief is too vague as

14   "defendants would have no idea what activity was proscribed by the ban"]; *Nat. Res.*

15   *Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1300 (9th Cir. 1992) ["Injunctive

16   relief may be inappropriate where it requires constant supervision"].

17         Finally, the proposed injunction provides that the City should be restrained and

18   enjoined pending trial of this action from discriminating against the disabled,

19   homeless individuals by reason of their disability."  Dkt. #29-2 at 1:24-26.  This

20   provision is similarly objectionable.  First, it does not describe "in reasonable detail"

21   the acts restrained, but rather simply compels that the City obey the law, which is not

22   acceptable.  *MGM Studios, Inc. v. Grokster, Ltd*., 518 F.Supp.2d 1197, 1226 (C.D.

23   Cal. 2007) ["blanket injunctions to obey the law are disfavored"]; *United States v.*

24   *DeAngelo*, No. SACV03-251GLT(MLGX), 2003 WL 23676571, at *2 (C.D. Cal.

25   June 26, 2003) (quoting *Burton v. City of Belle Glade,* 178 F.3d 1175, 1201 (11th

26   Cir.1999)) ["Such an injunction does no more than instruct Defendants to 'obey the

27   law,' and is too broad and vague for the Court to enforce"]; *see City of New York v.*

28   *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) [an injunction "must be

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-24-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1   more specific than a simple command that the defendant obey the law"].

2         Second, the proposed injunction is overbroad.  It goes beyond the allegations

3   pled in the complaint, which pertain to the City and Police Department's practices

4   related to criminal enforcement of certain sections and the ASL.  Instead, the above

5   provision of the proposed order could be read to apply to ***all*** services or programs of

6   the City – such as all administrative or criminal enforcement, its public work

7   maintenance practices, and any other City services and programs.  *NLRB v. Express*

8   *Pub. Co.*, 312 U.S. 426, 435-436 (1941) [prior violation "does not justify an

9   injunction broadly to obey the statute and thus subject the defendant to contempt

10   proceedings if he shall at any time in the future commit some new violation unlike

11   and unrelated to that with which he was originally charged"]; *MGM Studios, Inc.,*

12   *supra,* 518 F.Supp.2d at 1226-1227 [same].

13   **6.0   Conclusion**

14         Plaintiffs are unlikely to succeed on the merits of their claims under the Eighth

15   Amendment, the ADA and the Rehabilitation Act, and they have provided no

16   admissible evidence that they are likely to suffer irreparable harm.  Moreover, a

17   preliminary injunction is clearly ***not*** in the public interest and the equities weigh

18   against such an injunction.  Based on all of the foregoing, the City respectfully

19   submits that this Court should deny Plaintiffs' Motion for Preliminary Injunction.

20   Dated:  January 6, 2016          RUTAN & TUCKER, LLP
                      PHILIP D. KOHN

21                         DOUGLAS DENNINGTON
                      AJIT SINGH THIND

22

23                         O'MELVENY & MYERS LLP
                      MICHAEL G. YODER

24                         CHRISTOPHER S. WHITTAKER

25                         By:        /s/
                          Philip D. Kohn

26

27                         By:        /s/
                          Michael G. Yoder

28                         Attorneys for Defendants

Rutan & Tucker, LLP
*attorneys at law*

130/053733-0651
9095012.5 a01/06/16

-25-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION